## Ex parte J. B. Caples.

1. CRIMINAL LAW. *Refusal of court to grant trial. Habeas corpus by prisoner. Case in judgment.*

   The Circuit Court of the County of C., at the September term, 1880, met and organized, and, without transacting any business, adjourned *sine die*. The judge was induced to adjourn the court by a petition of the members of the bar and many prominent citizens from different parts of the county, which represented that, owing to incessant rains for several days, there was great backwardness in gathering the crops, and that the public interests would be promoted by an omission to hold the court. But before the adjournment, C., who was confined in the jail of the county under an indictment for murder, by his counsel demanded to be put upon his trial at that term. His request having been denied, and the court adjourned, he thereupon sued out a writ of *habeas corpus*, demanding to be set at liberty. The chancellor before whom the writ was returnable refused to discharge C., but admitted him to bail, upon a state of case which, ordinarily, would not have entitled him to it. He declined to give the required bond, and appealed from the chancellor's decision to this court. *Held*, that whether the reasons accepted by the circuit judge for adjourning his court were sufficient or not, is not material to the question presented in this case, as the appellant, in being admitted to bail, has received every advantage that he was entitled to demand because of the refusal to put him upon his trial in the Circuit Court.

2. SAME. *Refusal of court to grant trial to prisoner. Effect thereof.*

   The utmost effect of the refusal by a judge to afford a prisoner a trial, when demanded at the time appointed therefor by law, where no legal reason for a continuance of the case exists, would be to strengthen greatly an application by him for bail. Such refusal by a judge, in the exercise of his judgment, even if erroneous, would not entitle all the criminals in confinement to be set at liberty.

3. SAME. *Prisoner's right to trial. When judge may omit to hold court.*

   The provision of the State Constitution which requires that a Circuit Court shall be holden in every county at least twice in each year, was intended for the benefit of all litigants, but especially for those deprived of their liberty under criminal accusations: and the judge who declines to carry out this constitutional requirement, where persons in prison are demanding its benefits, assumes a grave responsibility, and one which should never be assumed except under such extraordinary circumstances of pestilence, or other widespread and controlling public necessity, as render it manifestly proper to subordinate private rights to the public welfare; and he has no right, upon such an issue, to consult the desires or interests of particular classes of the community, nor the mere wishes of the entire community.

APPEAL from the decision of Hon. F. A. CRITZ, Chancellor of the Sixth Judicial District, on *habeas corpus*.

The case is stated in the opinion of the court.

*Collins & Rasberry*, for the appellant.

The point that we insist upon is, that the appellant has been denied his constitutional rights, and for that reason is entitled to his discharge. A continuance cannot be granted in a criminal case unless a legal reason therefor be shown. The State would not have been entitled to a continuance, even if she had asked for one, unless she had first complied with the law. *Weeks' Case*, 31 Miss. 500; *McDaniel's Case*, 8 Smed. & M. 410. Whenever a State assumes the responsibility of depriving one of her citizens of his liberty, she must deal with him "according to the fixed rules of law." And when her representatives come to the conclusion that she cannot do this without detriment to the public interests, then she should discharge him.

The Constitutions of this State and of the United States declare that "no person shall be deprived of life, of liberty, or of property, except by due process of law." See Art. V., Amendments Const. U. S.; Const. Miss., Art. I., sect. 2. As to construction of the Constitution, see *Newell's Case*, 7 N. Y. 97; *Hawkins* v. *Carroll County*, 50 Miss. 758. Caples is not deprived of his liberty "by due process of law," because "due process of law" demands that he should have been allowed an opportunity to manifest his innocence. *Wetherbee* v. *Supervisors*, 70 N. Y. 234; Cooley on Tax. 265, 266; *Stuart* v. *Palmer*, 74 N. Y. 183, 190, 193; *Fisher* v. *Girr et al.*, 1 Gray, 32, 33, 35, 37, 39; *Donovan* v. *Vicksburg*, 29 Miss. 247; Potter's Dwar. on Stats. 428, 429, 430, 437; 2 Story on Con. 534. The Constitutions of the United States and of the State of Mississippi also declare that every person charged with crime shall have a fair, a speedy, and an impartial trial by an honest jury of the county. See Art. VI., Amendments Const. U. S.; Const. Miss., Art. I., sects. 7, 12, 28. Caples has been denied the right contemplated by these provisions, and is now entitled to his discharge. See Hurd on Habeas Corpus, 99, 231, 271, 274; *Carter's Case*, 11

Pick. 277; *Glover's Case*, 109 Mass. 340; Cooley's Const. Lim. 311; *Phillips' Case*, 16 Mass. 422; *Croom and May's Case*, 19 Ala. (N. S.) 558; *Milligan's Case*, 4 Wall. 116, 120, 122, 125; *Work's Case*, 2 Ohio St. 301; *Scott* v. *Billgery*, 40 Miss. 155; *Nixon's Case*, 2 Smed. & M. 497; Code 1871, sect. 2785. The rule as laid down in Nixon's case was, that the prisoner must be tried if it can possibly be done. The record shows that there was no legal reason for the continuance of Caples' case at the September, 1880, term of court. The question of trial is not a matter in the discretion of the court. It is a vested right which no power can deprive the prisoner of. *Davis' Case*, 6 How. 403; 2 Story on Con. 526; *Purdy's Case*, 2 Hill, 36; *s. c.* 4 Hill, 398; 1 Archb. Cr. Pr. & Pl. 225; 1 Bright. Dig. 1922; *Phillips' Case*, 1 Stew. 132; *Collier's Case*, 6 Ohio St. 58. It would be dangerous to establish as a precedent the action of the circuit judge in regard to this case. If the judges of our Circuit Courts have power to continue the court at one term without a legal reason for so doing, they would have the same power to continue for fifty terms.

*T. C. Catchings*, Attorney-General, for the State, submitted the case without filing a brief.

Chalmers, C. J., delivered the opinion of the court.

The Circuit Court of Clay County, at the September term, 1880, met, organized, and adjourned *sine die*, without the transaction of any business, the presiding judge being moved to this course upon the petition of the members of the bar and many prominent citizens from different portions of the county, who represented that, owing to the incessant and protracted rains, which had prevailed for many days, there existed great backwardness in gathering the crops, and that the public interests would be promoted by an omission to hold the court. The relator, who was at the time confined in jail under an indictment for murder, by his counsel objected to the adjournment,

and demanded to be put upon his trial. The adjournment was had despite his objections. He thereupon sued out this writ of *habeas corpus*, demanding to be set at liberty. The chancellor refused to discharge him, but admitted him to bail under proof as to the circumstances of the killing which, ordinarily, would not have entitled him to it. Declining to give the required bond, the relator brings the case here and demands from us to be set at liberty.

The Constitution of the State requires that a Circuit Court shall be held in each county at least twice in each year, a provision intended for the benefit of all litigants, but especially for those deprived of their liberty under criminal accusations.

The judge who declines to carry out this constitutional requirement, when persons in prison are demanding its benefits, assumes a very grave responsibility, and one which should never be assumed save under such extraordinary circumstances of pestilence or other wide-spread and controlling public necessity as render it manifestly proper to subordinate private right to the public welfare. A judge has no right, upon such an issue, to consult the desires or interests of particular classes of the community, so long as there remains one prisoner in custody who demands to be tried, nor even to subordinate the rights of the imprisoned to the mere wishes of the entire community. There must be some grave public necessity to warrant the prolongation in confinement of those who demand that speedy trial which the Constitution guarantees to the humblest citizen.

That the learned judge in this instance did not, in declining to hold the court, consult his own ease and wishes, but acted in obedience to his conscientious convictions of what the public interests demanded, we entertain no question. Whether the reasons accepted by him were sufficient to warrant the action taken, is not material to the present inquiry; for, whether sufficient or insufficient, the relator has, we think, in being admitted to bail, received every advantage that he was entitled to demand. It cannot be that an error of judgment on such

a question upon the part of the judge amounts to a general jail-delivery, and entitles all the criminals in confinement to be set at liberty. Such a doctrine would enable an unscrupulous judge practically to usurp the pardoning power, and give the same effect to the omissions of an indolent one. The utmost effect of a refusal on the part of a judge to afford a prisoner a trial when demanded at the time appointed by law, when no legal reason exists for a continuance of the case, must be very greatly to strengthen an application on his part for bail; and this benefit the relator has received.

The English Habeas Corpus Act, which did not contemplate the absolute discharge of persons availing themselves of it, but was primarily intended only to insure an opportunity to give bail, contained a provision that in cases of treason and felony, which were not by law bailable, the accused should be discharged if not indicted at the first term or tried at the second term after arrest, unless it was made to appear that the crown witnesses could not be produced. Hurd on Habeas Corpus, marg. p. 97.

Though our statute contains no such provision, the practice here is to discharge at the first term if no indictment be found and no showing made for a longer detention. Whether we would discharge at the second term, after indictment found, where the State had twice failed, without any legal showing, to bring the prisoner to trial, has not been settled by adjudication, and we will not decide until the case is presented to us.

The order of the chancellor is affirmed.