640 So.2d 893 (1994)
Anthony WINDER
v.
STATE of Mississippi.
Nos. 89-KA-00911, 89-KA-01174.
Supreme Court of Mississippi.
June 30, 1994.
Mikell Buckley, Jackson, for appellant.
Michael C. Moore, Atty. Gen., Jackson, Patricia W. Sproat, Columbus, for appellee.
En Banc.
SMITH, Justice, for the Court:
In this appeal from the Circuit Court of Washington County, the only issue of merit is whether there was a violation of Miss. Code Ann. § 99-17-1 (Supp. 1989), commonly known as the 270 day rule. The remaining issues are without merit and need not be discussed. We find that there was no violation of the 270 day statute, and the convictions and sentences of Anthony Winder are affirmed.
Winder and co-defendant Johnny Lee Hardy were indicted on July 13, 1988, for the crimes of burglary of an occupied dwelling, conspiracy, and rape. Hardy pled guilty to burglary and conspiracy and was sentenced to ten years for burglary and five years for conspiracy. The State dropped the rape charge against Hardy and he agreed to testify against Winder. Winder was tried on May 24 and 25, 1989, and found guilty of burglary and conspiracy. The jury could not agree on Winder's guilt or innocence on the rape charge, and a mistrial was ordered. Winder was sentenced to fifteen years on the burglary conviction and five years on the conspiracy charge. On July 19 and 20, 1989, Winder was retried on the rape charge, found guilty and sentenced to thirty-five years in prison for the rape. Winder appeals from the judgments in both trials.
Winder, convicted conspirator, burglar and rapist, does not refute the sufficiency of the evidence supporting his convictions, but rather appeals citing the following issue worthy of discussion.
THE TRIAL COURT ERRED IN REFUSING TO DISMISS THE CASE DUE TO THE FAILURE OF THE STATE TO PROSECUTE WITHIN 270 DAYS OF ARRAIGNMENT.

*894 FACTS
Anthony Winder was arraigned July 22, 1988. He filed a Motion for Speedy Trial on August 31, 1988. His Motion to Dismiss on April 21, 1989, alleged a violation of Miss. Code Ann. § 99-17-1 (Supp. 1989), since 273 days had elapsed. The lower court overruled Winder's motion April 26, 1989. Winder's first trial began May 24, 1989. No continuances were requested by Winder or the State, and there were no particularized written continuances for good cause given. Certain factors in the record tolled the statute sufficiently so that the time had not run when the motion to dismiss was heard and when trial commenced.

DISCUSSION
The legislature has failed to specify a remedy when an accused is not afforded a trial within 270 days after arraignment. This Court initially addressed this statute in Payne v. State, 363 So.2d 278 (Miss. 1978), holding that a violation required mandatory dismissal with prejudice of the indictment. This position is a much too liberal and lenient interpretation of legislative intent of the statute. Again, in Turner v. State, 383 So.2d 489 (Miss. 1980), this Court held that unless there was literal compliance with the statute's mandatory provision, the accused must be discharged. However, in Turner, this Court added that unless "good cause" be shown, and a continuance duly granted by the court, the accused must be tried no later than 270 days after arraignment. See also Mitchel v. State, 572 So.2d 865, 870 (Miss. 1990); Moore v. State, 556 So.2d 1031, 1033 (Miss. 1990); Kinzey v. State, 498 So.2d 814, 816 (Miss. 1986); Lightsey v. State, 493 So.2d 375, 378 (Miss. 1986); Nations v. State, 481 So.2d 760, 761 (Miss. 1985); Bailey v. State, 463 So.2d 1059, 1061-62 (Miss. 1985).
In this case, the record first shows that the statute was tolled for 23 days during plea negotiations, even though the State did not receive a continuance. On August 8, 1988, a plea bargain offer was filed by the State and was not rejected by Winder until August 31, when he filed his demand for a speedy trial. In Reed v. State, 506 So.2d 277 (Miss. 1987), the parties entered into plea negotiations. Following a series of offers and counter offers, Reed ultimately withdrew his plea and the trial court immediately set trial for the next available date. The resulting delay was 293 days after Reed's arraignment. Id. at 281. On appeal this Court stated:
In the instant case, the State never sought a continuance throughout the plea negotiations. However, it is equally clear that Reed acquiesced in and initiated much of the plea bargaining that caused the resulting delay. If the defendant is the cause of the delay, he cannot complain thereafter. (cite omitted).
Reed, 506 So.2d at 281.
Additionally, the statute was tolled by a continuance entered on the minutes at the end of the September term of court. This was a single continuance carrying this case over to the next term. The trial court indicated a standing order to carry cases from one term to the next. This type of generalized continuance order has been disapproved previously by this Court. See Vickery v. State, 535 So.2d 1371 (Miss. 1988). Yet, this single continuance order in the case at bar tolled the statute an additional 14 days.
The record clearly supports the contention that there was a heavy workload in the prosecutor's office, amounting to approximately 670 cases brought to trial in 1988. The district court trial docket was unquestionably congested. The defense entered no objection to the continuance to the next term in spite of its earlier speedy trial demand. Failure to object is equivalent to acquiescence to this continuance.
This Court held in Williamson v. State, 512 So.2d 868, 877 (Miss. 1987): "Where the accused is not tried within 270 days of his arraignment, the state has the burden of establishing good cause for the delay since the accused is under no duty to bring himself to trial." We also held in Williamson that the congested docket, in that particular case, was good cause showing for delay of the trial beyond the 270 day period. An additional warning was given: "However, we do not wish to imply that congested dockets will in every case constitute good cause for delay under the 270 day rule. Because of this, we limit our ruling today to these particular *895 facts." Id. In truth and in fact, the same situation exists in the case sub judice and consideration must be given accordingly, the ruling of Williamson notwithstanding. Our ruling is similarly limited to the facts of this particular case.
Winder's case was originally set for trial during the week of February 17, 1989. This case and a companion case with the same defendants were to have been tried successively. Less than 24 hours prior to trial, Winder filed a notice of alibi defense in the companion case which impacted on the State's trial strategy in the case sub judice. Winder also claimed an alibi defense in this case.
The record further indicates that apparently because of icy weather, all cases scheduled for trial that week were cancelled. These days of inclement weather constitute sufficient "good cause" for the rescheduling of any case for trial.
The better method for the State to secure a continuance in Winder's case would have been to obtain a specific order setting out the details mentioned above. Regardless, the motion to dismiss was filed 273 days after arraignment, overruled, and the case tried within 30 days thereafter. The statute was effectively tolled at least 37 days at the time the motion was filed, making the motion premature, as only 236 days had elapsed. The statute was again tolled between the time of the motion to dismiss on April 21, and the hearing on April 26, 1989. An additional 28 days for the time period from the hearing date until the date of trial can be added, making a total of 264 days. Considering the three separate times the statute was tolled, and the reasons therefor, there was no violation of the 270 day rule. Equally important in the case sub judice is the issue of any resulting prejudice to the defendant. Winder alleges none and received none. He was already incarcerated at Parchman Penitentiary for a parole violation of a previous felony conviction, as well as under indictment for another offense and awaiting jury trial during the pendency of this case. Where a defendant is serving a prison term in the state penitentiary or is imprisoned on totally unrelated charges, there is no resulting prejudice based solely on continued incarceration.

CONCLUSION
Winder was duly tried, convicted and sentenced as a burglar, conspirator and rapist. Winder does not dispute that there was sufficient evidence to support these convictions. In arguing that the 270 rule was violated, Winder does not consider the different times in which the statute was tolled. Since the 270 day rule statute was not violated in this case, Winder's convictions and sentences are affirmed.
NO. 89-KA-00911 COUNT I: CONVICTION OF CONSPIRACY AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF BURGLARY OF OCCUPIED DWELLING, AND SENTENCE OF FIFTEEN YEARS (15) IN THE CUSTODY OF MDOC, AFFIRMED. SENTENCE OF COUNT II TO RUN CONSECUTIVE TO COUNT I. BOTH SENTENCES CONSECUTIVE TO ANY OTHER SENTENCES NOW BEING SERVED. NO. 89-KA-01174 CONVICTION OF RAPE AND SENTENCE OF THIRTY-FIVE (35) YEARS IN THE CUSTODY OF MDOC, AFFIRMED.
PRATHER, P.J., and PITTMAN and JAMES L. ROBERTS, Jr., JJ., concur.
HAWKINS, C.J., concurs in results only.
HAWKINS, C.J., concurs with a separate written opinion.
SULLIVAN, J., dissents with separate written opinion, joined by McRAE, J.; BANKS, J., joins in part.
BANKS, J., dissents with separate written opinion, joined by DAN M. LEE, P.J.
HAWKINS, Chief Justice, specially concurring:
I concur in affirming Winder's convictions but for a different reason. I would hold that Miss. Code Ann. § 99-17-1 (Supp. 1992), embracing the 270-day rule, being a procedural statute has no binding effect upon this Court.
*896 Winder and co-defendant Johnny Lee Hardy were indicted on July 13, 1988, for the crimes of burglary of an occupied dwelling, conspiracy and rape. Hardy pled guilty to burglary of a dwelling and conspiracy and was sentenced to ten years for burglary and five years for conspiracy. The State dropped the rape charges against Hardy, and he agreed to testify against Winder. Winder was tried on May 24 and 25, 1989, and the jury found him guilty on the charges of burglary of an occupied dwelling and conspiracy. However, the jury could not agree on the rape charge, and the trial court ordered a mistrial as to that count in the indictment. The trial court sentenced Winder to fifteen years for the burglary conviction and five years for the conspiracy conviction. On July 19 and 20, 1989, Winder was retried on the rape charge. The jury returned a guilty verdict and he was sentenced to thirty-five years in prison. Winder has appealed.

FACTS
During the early morning hours of February 13, 1988, Wanda Stewart,[1] along with her two children and stepson, was asleep in their home in rural Washington County. Her husband, Raymond Stewart, was not home. She was awakened by two black men who pulled her out of the bed at gunpoint and took her into the living room. The men told her that they would kill her if she did not do what they told her to do. They put her on the living room couch, and the shorter of the two men (later identified by Wanda as Johnny Lee Hardy) kept a gun and knife at her head while the taller one (Winder) raped her. The two men then switched positions and Hardy raped her. When he finished, Winder had intercourse with her again, followed by Hardy. She testified that while Hardy was on top of her the second time, Winder went into the bedroom and returned with a small gun case containing her husband's revolvers. They then searched her purse for money and left with the guns. Raymond Stewart testified that four of his pistols and a holster were stolen from their home that night.
On March 25, 1988, Detective Ricky Spratlin of the Greenville Police Department stopped a vehicle driven by James Howard after Howard had made an improper turn. Spratlin and his partner, Officer Dan Warren, told Howard to get out of the car, and Warren questioned him about the improper turn. Spratlin looked inside the car and saw the barrel of a pistol sticking out from under the arm rest on the front seat. He then placed Howard under arrest for making an improper turn and carrying a concealed weapon. At the police station, the serial number of the gun was checked and was found to have been stolen from the Stewart house.
Howard testified that he was initially charged with the burglary and the rape of Wanda, but the charges were dropped when he told the police that he obtained the gun in a trade with Winder. According to Howard, he and his brother Tim were working at a local garage in late February, 1988, when Winder came to the garage and offered to give Howard and his brother two pistols if they would put two tires and two chrome rims on his car. Howard testified that he and his brother agreed, and in exchange for the tires and rims, he received the .38 revolver which Detective Spratlin found in his car, and Tim received a long-barrel .22 pistol. Tim Howard corroborated James Howard's version of these events. Deputy Travis Jenkins of the Washington County Sheriff's Office executed a search warrant for the residence of Winder and his girlfriend, Julia Carter, and found the holster that was taken from the Stewart's home in a chest-of-drawers in the bedroom.
Hardy testified that he and Winder had been out drinking on February 13, 1988, when Winder decided that they should go to this house where he had heard there was some money. They parked the car on the other side of a nearby pecan orchard and walked to the house. He testified that Winder went inside the house first while he waited outside. A few minutes later, Winder gave him a purse that he found inside. Hardy *897 then went inside and Winder brought Wanda out of the bedroom at knife point and put her on the couch in the living room. Winder raped Wanda and then told Hardy to "get you some." Hardy testified that, although he did not want to because he was afraid, he did have intercourse with her. He and Winder then left the house with the pistols.

LAW
On appeal Winder does not challenge the sufficiency of the evidence to convict.

I.

270-DAY RULE
Winder's only assignment meriting discussion is the violation of the 270-day rule, Miss. Code Ann. § 99-17-1. The circuit court proceedings relevant to this question follow.
As noted, on July 13, 1988, Winder and Hardy were indicted by the grand jury of Washington County under a three-count indictment of conspiracy to commit the crime of burglary, burglary of the inhabited residence of Wanda Stewart, and rape of Wanda Stewart. This was Cause Number 20,439.
The same grand jury had indicted Winder on another unrelated crime, under Cause Number 20,438.
On July 22, 1988, Winder was arraigned. On August 31, 1988, he made a demand for a speedy trial.
The other case, No. 20,438, was set for trial the week of February 17, 1989. The day before that trial, defense counsel notified the State of an alibi defense, and No. 20,438 was continued.
On April 21, 1989, 272 days after his arraignment, Winder moved to dismiss in this cause, No. 20,439, because he had not been tried within the time prescribed by Miss. Code Ann. § 99-17-1. From the time of his arraignment until the filing of this motion, there had been no motion made by either the State or Winder for a continuance, and no order entered granting a continuance in this specific case. Winder was incarcerated the entire time.
On April 26, 1989, the circuit judge conducted a hearing on motions to dismiss in a number of criminal cases, including Winder's. When Winder's motion was heard, the State pointed out that Winder had in Cause No. 20,438 come up with an alibi the day before his trial in February, and this required that the case be continued. The State's argument and the court's response are as follows:
BY MR. KELLY:
The fact that the defendant filed or notified the State of an alibi in 20,438 the day before the trial, I believe is correct, caused 20,438 to be continued. Had the case not been continued and we had gone to trial on 20,438, then this case, 20,439, it seems to me, could have been disposed of one way or the other. If we could have obtained a conviction, then we could have at that point offered the defendant some plea which he may well have taken which would have disposed of the other case also. Had he been acquitted on that particular case, then the other case would then have been quickly set for trial, which March the 2nd, 1989, was a month and a half prior to the 270 days running on either of these two cases. I feel as though that the delay occasioned by the defendant in 20,438 impacted upon our ability to dispose of 20,439, so 
BY THE COURT:
I observe that that is probably the case and I also observe that the co-defendant in this case, 20,439, has not filed a motion for a speedy trial nor has he filed any 270-day motion, nor has either of the defendant's filed a motion for a severance. And I'm not very well going to dismiss one and not the other, so Mr. Winder's motion will be overruled.
BY MR. FRISBIE:
Okay. If the Court please, I would point out that we do not represent the co-defendant.
BY THE COURT:
That's right.

*898 BY MR. FRISBIE:
As a matter of fact, he is going to be a State witness. That's what we were advised of, and they haven't revealed a deal on him, as I recall. Doesn't Robert Buck represent the other defendant?
BY THE COURT:
Yes, sir.
Miss. Code Ann. § 99-17-1 (Supp. 1992) is short and plain:
Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned. (Emphasis added)
This statute was enacted by the Legislature by Ch. 420, Laws 1976.
We first construed this statute in Payne v. State, 363 So.2d 278 (Miss. 1978), holding that its violation required the dismissal of the indictment. We next encountered Miss. Code Ann. § 99-17-1 in Turner v. State, 383 So.2d 489 (Miss. 1980), and again held that unless there was literal compliance with its mandatory provision, the accused must be discharged.[2]
Beginning with Turner this Court has consistently held that the Legislature in enacting Miss. Code Ann. § 99-17-1 provided an arbitrary, automatic, talismanic formula or rule for the benefit of all those criminally indicted: unless good cause be shown, and a continuance duly granted by the court, the accused must be tried no later than 270 days after arraignment. Mitchell v. State, 572 So.2d 865, 870 (Miss. 1990); Moore v. State, 556 So.2d 1031, 1033 (Miss. 1990); Kinzey v. State, 498 So.2d 814, 816 (Miss. 1986); Lightsey v. State, 493 So.2d 375, 378 (Miss. 1986); Nations v. State, 481 So.2d 760, 761 (Miss. 1985); Bailey v. State, 463 So.2d 1059, 1061-62 (Miss. 1985) (comparing 270-day rule with constitutional right to a speedy trial). Following our interpretation, Miss. Code Ann. § 99-17-1 has been repeatedly re-enacted without change. It is therefore clear that this Court's interpretation was in harmony with Legislative intent.
"Where the accused is not tried within 270 days of his arraignment, the state has the burden of establishing good cause for the delay since the accused is under no duty to bring himself to trial." Williamson v. State, 512 So.2d 868, 877 (Miss. 1987).
Although we held in Williamson that the congested docket in that particular case was a good cause showing for a delay of a trial beyond the 270-day period, we warned: "However, we do not wish to imply that congested dockets will in every case constitute good cause for delay under the 270 day rule. Because of this, we limit our ruling today to these particular facts." Id. at 877. Then in Vickery v. State, 535 So.2d 1371 (Miss. 1988), we held that an accused's statutory right was more than a member of a herd, and that a boiler plate circuit court order reciting "For good cause shown the following numbered criminal cases are continued until the next regular term of this court ...," and including the accused's case, did not constitute a compliance with the statute where the accused was not tried within 270 days. Id. at 1375. See also Yarber v. State, 573 So.2d 727, 729 (Miss. 1990) (routine notations in minute book at end of court term type of mass continuances condemned by Court).
The reasons stated by the prosecution and circuit judge in this case for holding the 270-day rule had not been violated simply will not wash. There was no showing that the presentation of an alibi defense and consequent delay of trial of the unrelated crime for which Winder was indicted in Cause No. 20,438 kept the state or court from setting this cause, No. 20,439, for trial within the 270 days and trying it. Indeed, Cause Number 20,438 had been continued at the request of the State two months previous to bringing this case on for trial. Winder made a prompt demand for a speedy trial and sought no continuance. He was not a fleeing defendant; he was in prison the entire time. The *899 reason given by the circuit judge that the rule was not violated, namely that Winder's co-defendant Hardy, represented by another attorney, had made no motion for a speedy trial.
I also reject the belated reason the State makes in its brief, that a plea bargain offered by the State on August 8, 1988, and rejected by Winder's August 31, 1988, demand for a speedy trial, somehow tolled the statute. Cf. Reed v. State, 506 So.2d 277 (Miss. 1987) (where active plea bargaining did in fact delay the trial). There has been no showing that this offer of a plea bargain on August 8, 1988, somehow delayed the State in bringing Winder to trial. The State, also belatedly, in its brief, attempts to offer another general order continuing a number of cases for the term as a compliance with the statute. As noted, we specifically rejected this in Vickery. Moreover, and significantly, neither did the prosecution offer, nor did the circuit judge consider either of these two reasons as a basis for holding the 270-day rule had not been violated.

SHOULD 270-DAY RULE CONTINUE?
It is clear from the record that the State violated the 270-day rule, and unless we depart from established precedent, Winder must be discharged. It is equally clear that the violation of this rule did not harm Winder's defense in the slightest. There is nothing in the record suggesting that had Winder been tried within 270 days, as opposed to shortly thereafter, the State's case would have been weaker or Winder's defense stronger.
Under our previous holdings, however, prejudice or nonprejudice to the accused is immaterial in enforcement of the rule.
Is this Court duty bound to reverse his conviction and discharge a man whose guilt of revolting crimes is not questioned on appeal because of the State's violation of the 270-day rule? I would hold that we are not required to do so.
In reaching this conclusion, I am not unmindful this would overrule established precedent. While unusual, it is by no means novel that Courts must on occasion overrule prior cases to meet the change in times and demands of justice. Stone v. Reichman-Crosby Co., 43 So.2d 184 (Miss. 1949); Mitchell v. State, 179 Miss. 814, 176 So. 743 (1937); Brewer v. Browning, 115 Miss. 358, 76 So. 267 (1917). Nevertheless, it is a matter of considerable gravity to overrule prior decisions of this Court.
Of even more serious concern is another well-settled principle, namely: that
When a statute is repeatedly re-enacted in essentially the same language and by its retention in all subsequent codes, a decision of this Court interpreting the statute becomes in effect a part of the statute. Therefore, if the statute is to be amended, it should be done by the legislature and not by judicial decision.
Crosby v. Alton Ochsner Medical Foundation, 276 So.2d 661, 670 (Miss. 1973).
In accord with familiar rules of construction, the legislature by reenactment of a statute which has been construed by the highest court of a state, adopts the construction placed upon the state by the Court.
White v. Williams, 159 Miss. 732, 132 So. 573, 76 A.L.R. 757 (1931).
In Yelverton v. Yelverton, we held that once this Court has interpreted a statute and it is re-enacted without modification by the Legislature, any future modification "must be done by the Legislature and not by us." 200 Miss. 569, 571, 28 So.2d 176, 176 (1946). Also see In re Estate of Kelly, 193 So.2d 575, 578 (Miss. 1967); Kittrell v. O'Flynn, 203 Miss. 164, 33 So.2d 628 (1948); Drummond v. State, 184 Miss. 738, 185 So. 207 (1938); Russell v. Federal Land Bank, 180 Miss. 55, 176 So. 737 (1937); Hughes v. Gully, 170 Miss. 425, 153 So. 528 (1934); White v. Illinois Central R. Co., 97 Miss. 91, 55 So. 593 (1910). This is the general rule prevailing in other jurisdictions as well, 82 C.J.S. Statutes, § 370 b., pp. 848-852.
We are not without precedent in departing from this principle in this case, however, because here we simply do explicitly what was done implicitly in our recent decision Smith v. Jackson Construction, 607 So.2d 1119 (Miss. 1992) (Robertson, J., concurring; Hawkins, P.J., dissenting).
*900 I realize that this raises a serious question, namely: whether this Court has the authority under our Constitution to frustrate the Legislative will and deprive a defendant of a right given him by statute in court proceedings. In this connection it should be noted that Miss. Code Ann. § 99-17-1 is clearly a procedural statute. Flores v. State, 586 So.2d 811 (Miss. 1991) (McRae, J., dissenting, 586 So.2d at 816).
In Hall v. State, 539 So.2d 1338 (Miss. 1989); Mitchell v. State, 539 So.2d 1366 (Miss. 1989); and Leatherwood v. State, 548 So.2d 389 (Miss. 1989), we held that the Child Abuse Evidence Act, Miss. Code Ann. § 13-1-401, et seq., Chapter 345, Laws 1986, dealing with evidence in child sexual abuse cases invaded the doctrine of separation of powers and was therefore ineffective.
In McLendon v. State, 539 So.2d 1375 (Miss. 1989), and McCarty v. State, 554 So.2d 909 (Miss. 1989), we held that Legislative enactments dealing with procedures for a duly-convicted felon to seek judicial relief had no validity unless this Court "accepted" them.
In Blanks v. State, 542 So.2d 222 (Miss. 1989), we held that a criminal statute authorizing multi-count indictments, Miss. Code Ann. § 99-7-2 (Supp. 1988) "although addressing a matter of practice and procedure in criminal prosecutions, has been accepted and enforced by this Court." Blanks, 542 So.2d 222 at 225. See also, Corley v. State, 584 So.2d 769 (Miss. 1991) (Hawkins, P.J., concurring, 584 So.2d at 773).
Thus we have made it clear that no Legislative enactment dealing with evidence or court procedures can enjoy validity unless this Court accepts it.[3]
Article 6, Section 146 of the Mississippi Constitution states: "The Supreme Court shall have such jurisdiction as properly belongs to a court of appeals and shall exercise no jurisdiction on matters other than those specifically provided by this Constitution or by general law."
Our Constitution gives this Court no superintending or supervisory control over trial courts. Courts and legal scholars have long recognized that "appellate jurisdiction," which encompasses the power to consider and determine cases which have been concluded in a trial court and properly brought before a court on appeal, is something distinct and quite different from "superintending" or "supervisory" control over trial courts, which encompass the power to disrupt proceedings in progress at the trial court level, and prescribe rules of procedure for such courts. Drummond v. State, 184 Miss. 738, 746, 185 So. 207, 208-09 (1938); Re Phelan, 225 Wis. 314, 274 N.W. 411, 112 A.L.R., 1345, 1358-1359 (1937); Hestres v. Brennan, 50 Cal. 211, 217 (1875). Contrary to many state constitutions which give their supreme courts supervisory power over trial courts in addition to appellate jurisdiction, our Constitution is silent as to such authority.
We have nonetheless asserted and exercised a supervisory power over trial courts, City of Mound Bayou v. Johnson, 562 So.2d 1212 (Miss. 1990) (Hawkins, P.J., dissenting at 1220), and the power to enact comprehensive trial court rules on civil and criminal procedure and rules of evidence  with this Court being the sole authoritative voice  as inherent in us by virtue of being the final court of appeals in this State. We have equated appellate jurisdiction over trial courts with supervisory power over them and erased all distinction between the two concepts.[4]
*901 These sweeping holdings of this Court's prerogative under our Constitution as to any Legislative enactment dealing with evidence or court procedure, on trial court proceedings have met with no cognitive dissonance from the trial bench or bar, and with but one, or possibly two, exceptions, none by either of the major law schools of this State.[5] The Legislature has also apparently acquiesced in our holdings by enactment of Ch. 573, Laws 1991 abolishing a host of statutes on procedure and evidence.
In the recent case of Towner v. Moore, 604 So.2d 1093 (Miss. 1992), we held that Miss. Code Ann. § 25-4-107 (1972), guaranteeing a defendant charged with a violation of a conflict of interest statute Miss. Code Ann. § 25-4-101, et seq., (Supp. 1992), to a trial by jury and that he could be convicted only upon "unanimous verdict of the jury," did not deprive the court of the power to enter a summary judgment against the defendant for violation of the statute. We held Rule 56 on summary judgments superseded the statute. We doubted if the Legislature "would have the authority to preclude summary judgment." 604 So.2d at 1099. In that case we denied the defendants the right granted by statute to a trial by jury for alleged violation of other provisions of the statute. Moreover, Miss. Code Ann. § 25-4-109 (1972) required that a jury could convict only upon a finding of "clear and convincing evidence" of violation of the statute. Even on non-procedural statutes we have held that this Court could treat a statutory mandate as discretionary. Wilbourn v. Hobson, 608 So.2d 1187, 1189 (Miss. 1992).
I am thus inescapably led to the conclusion that Miss. Code Ann. § 99-17-1 insofar as it seeks to guarantee unto a defendant in a criminal case the absolute right to be tried within 270 days following arraignment is not binding upon the courts of this State. It follows that our previous case holdings to the contrary have been superseded by subsequent cases dealing with procedural statutes, and we do no violence to our Constitution.[6]
In this case we have a defendant duly convicted, with the exception of violation of the 270-day rule by the State, of revolting crimes in which on this appeal his guilt is not challenged. While it was a clear cut technical violation, it caused Winder no harm in presenting his defense.
Should he go free and the victims of his crime and society suffer because of a district attorney's oversight or indifference and nothing more? I would hold that he should not because Miss. Code Ann. § 99-17-1 has no binding effect in a criminal prosecution.
SULLIVAN, Justice, dissenting:
I respectfully dissent from the plurality opinion because the 270 rule was clearly violated in this case. Winder was arraigned on July 22, 1988. He filed a Motion for a Speedy Trial on August 31, 1988. The state took no further action in Cause No. 20,439 until April 21, 1989, when Winder filed a Motion to Dismiss pursuant to Miss. Code Ann. § 99-17-1 (Supp. 1989).
*902 The plurality opinion does not question the fact that more than 270 days elapsed between the time of Winder's arraignment and his trial; rather, the Court holds that the statute was tolled from running based on certain delays documented in the record. I disagree with my brother Smith. Winder is not chargeable with the time allotted to him by the majority opinion.
I agree that Winder does not allege the insufficiency of the evidence to convict on this appeal, nor is a recitation of that evidence necessary to the legal issue except to justify in the public mind the action the court takes today. The issue presented by Winder, and the only one under prior caselaw that he needs to present, is whether or not the State of Mississippi violated the 270 day statute. Miss. Code Ann. § 99-17-1 (Supp. 1992). If it did, the Winder conviction must be reversed and Winder discharged. If it did not, as my brother Smith contends, then the Winder conviction may be affirmed and all the other matters discussed by the various opinions of the Court need not be considered.
Our speedy trial statute is short and unambiguous. It states that "[u]nless good cause [is] shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned." Miss. Code Ann. § 99-17-1 as Amended in 1976 (Emphasis added).
One thing must be mentioned with regard to the specific language of the statute: neither Winder nor the state ever requested a continuance in this matter  thus, good cause was never shown, and a continuance was never duly granted by the court. If the statute is to be interpreted to mean what it says, the majority has no basis upon which to determine that the 270 day rule was not violated.
With that said, I will now address the majority's assertion that certain occurrences tolled the statute from running. First, Justice Smith's reliance on Reed v. State, 506 So.2d 277, 281 (Miss. 1987), to support the idea that plea negotiations between Winder and the state tolled the statute for 23 days, even though the state did not request and receive a continuance, is misplaced. The Reed case is simply not analogous to this case. In Reed, we found that since the defendant not only "acquiesced in," but also "initiated much of the plea bargaining that caused the resulting delay," he could not complain about the delay on appeal. Id. at 281. Furthermore, we specifically noted that the parties "entered into a series of plea negotiations with each side making offers and counter offers," and that Reed indicated to the state that he would enter a plea, but thereafter withdrew from the offer. Id. Additionally, we stated that
we do not hold today that plea negotiations will always constitute good cause under the 270 day rule. Rather, we expressly reject the State's argument on this point. As we see it, such a rule could serve no useful purpose and would only serve to defeat the very purpose and protections established by our 270 day rule.
Id.
Nothing in the record suggests that Winder initiated plea negotiations; in fact, there is no evidence that any real negotiating, in the context of making offers and counter offers, ever took place. All that can be gleaned from the record is that: (1) the state made Winder a plea bargain offer on August 8, 1988; (2) the offer was held open until September 2, 1988; and, (3) on August 31, 1988, within the time allotted to him, Winder rejected the offer by making his demand for a speedy trial. The bottom line is that Winder did not cause the delay. He merely rejected the offer. The record does not reflect that the state had any reason to rely on Winder accepting the offer; indeed, nothing indicates that the prosecution should have been anything other than fully prepared to proceed to trial.
The approach adopted by the plurality today defeats the "purpose and protections established by our 270 day rule" by telling prosecutors that all they must do is make an open ended plea bargain offer to an accused, which, if not rejected, will serve to indefinitely toll the statute. Reed, 506 So.2d at 281. I reject Justice Smith's interpretation of the *903 Reed case as it pertains to this issue, and assert that only where it is clear from the record that the accused caused the delay should the statute be considered to have been tolled because of plea negotiations.
Next, my Brother Smith argues that a continuance entered on the minutes at the end of the September term of court served to toll the statute. In Vickery v. State, 535 So.2d 1371 (Miss. 1988), this Court specifically rejected the view that generalized trial court orders continuing cases from one term of court to the next constitute good cause for tolling the 270 day statute, stating, "[t]o allow a trial court to circumvent the statute in this manner and to this extent would be tantamount to abolishing the statute." Id. at 1375.
Justice Smith distinguishes the continuance in this case from the one in Vickery by characterizing it in terms of a "single continuance carrying this case over to the next term." (Plurality opinion at page 897). However, at the hearing on Winder's Motion to Dismiss, the state indicated that the trial court "continued all cases on the criminal docket from the September 1988 Term to the November 1988 Term." Furthermore, it is clear from the court's minutes that this case was one of the many remaining Washington County Circuit Court cases continued from the September Term to the November Term. This is precisely the type of generalized trial court order of continuance that the Vickery decision disapproved of in terms of tolling the 270 day statute. I disagree that this general order of continuance served to toll the statute an additional fourteen days.
My brother Smith also notes that since Winder did not object to the trial court's general continuance, that he essentially acquiesced to the continuance. Justice Smith, however, cites no authority for this proposition. It is significant to note that Winder's counsel stated at the hearing on the Motion to Dismiss that he never even received notice of the general continuance order, and that in fact, the first time he had seen it was at the hearing.
Moreover, we have already blurred the line between the constitutional speedy trial requirement and the 270 day statutory requirement by factoring into the 270 day analysis a determination of whether or not the accused ever asserted his right to a speedy trial  a requirement not statutorily created. Should we now require that the accused also object to a generalized continuance order, of which he was not even aware, in order to keep the statute from being tolled? I think the burden is being laid too heavily on the accused in this context. Winder asserted his right to a speedy trial and never requested a continuance. It was then the state's burden to bring him to trial within the statutory time period or show good cause for not so doing. Williamson v. State, 512 So.2d 868, 877 (Miss. 1987).
Justice Smith also argues that Winder's trial was originally scheduled for the week of February 17, 1989, but that icy weather caused the trial court to reschedule all cases for that week and conduct arraignments instead. A careful review of the record illuminates the fact that nobody was quite sure what, if any, effect the icy weather had on the trial court's disposition of cases. The record is not clear as to whether there were any trial days moved because of the weather, or, if there were, how many days or which days were moved.
It is also crucial to note that, although my brother Smith asserts that Winder's case was originally scheduled for the week of February 17, 1989, it was actually the companion case No. 20,438 that was scheduled for that week. The fact is No. 20,439 was never set for trial until after the 270 days had expired. If Winder's assertion of his alibi defense in 20,438, coupled with the inclement weather, constituted good cause for continuing 20,438, the state should have moved for such a continuance. However, it must be remembered that 20,438 is a completely different case from the one presently on appeal. Whether or not the state arguably had reason to continue that case is not relevant to the 270 day analysis here.
Additionally, to state that Winder's alibi defense in 20,438 impinged on the state's ability to bring him to trial for 20,439 does not comport with the evidence contained in the record or the plurality opinion. On one *904 hand Justice Smith asserts that Winder caused a delay in 20,438 because of a last minute alibi defense, and consequently 20,439 was delayed. On the other hand, Justice Smith contends that icy weather caused all cases the week of February 17, 1989, to be cancelled and reset. The alibi defense could not have served to delay what was allegedly already delayed.
The reason given by the circuit judge that the rule was not violated, namely: that Winder's co-defendant, Hardy, represented by another attorney, had made no motion for a speedy trial, is frivolous. It is also significant that the prosecution did not offer nor did the circuit judge consider either of the two reasons offered by the state in its brief as a basis for holding the 270 day rule had not been violated.
I concur with Justice Banks that in Mississippi the absolute discharge rule has led to less rigorous enforcement of the speedy trial rights of defendants. We should expressly overrule those cases that allow general docket congestion to be considered good cause, and I agree that the unavailability of evidence due to lack of diligence should not be considered good cause. I would also hold inadmissible the unsworn testimony of a trial judge, sua sponte, from the bench. When a judge makes statements into the record to be taken as evidence for one side or the other, he immediately becomes incompetent to preside as judge. A judge may not testify before himself. Any evidence that the prosecution offers must be the prosecution's evidence from a competent witness subject to strenuous cross-examination. That is not the case when the trial judge testifies.
I would also overrule Carson v. State, 607 So.2d 1132 (Miss. 1992), which holds that if the court was in session on the 270th day, but tried another case that day, and after the expiration of the 270 days, but during the term, then tried the defendant, the statute was not violated.
Again, our speedy trial statute states that "[u]nless good cause [is] shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned." Miss. Code Ann. § 99-17-1 as Amended in 1976. (Emphasis added).
Contrary to my brothers Banks and Smith, I do not believe there is any ambiguity as to what the "remedy" is when the state fails to comply with the statute. Clearly there is an exception built in: if, upon a showing of good cause, a continuance was granted, the 270 day clock is deemed to have stopped running for the duration of the continuance. Otherwise, any offense for which an indictment is presented, must be tried within 270 days of arraignment therefor, and no later. If Winder was to be tried for Cause Number 20,439 consistent with the mandate of the statute, the trial must have commenced within 270 days of his arraignment for that offense, or he should not have been tried at all.
There is no question as to whether the indictment should be dismissed with or without prejudice; rather, the only question is whether or not the state violated the statute, and if so, irrespective of whether the state relies on the original indictment, or presents a new one to the court, the statute clearly tells us that a defendant simply cannot be brought to trial more than 270 days after being arraigned for a particular offense. Contrary to Justice Banks' opinion, I do not agree that there is an "issue of the appropriate remedy for a violation of the rule" to "revisit." (Banks, J., dissenting at 912).
My point is further illuminated by looking at Section 99-35-1 of the Mississippi Code (Supp. 1993), which provides:
In all cases of conviction of a criminal offense against the laws of the state by the judgment of a justice court, or by a municipal court, for the violation of an ordinance thereof, an appeal may be taken within forty (40) days from the date of such judgment of conviction to the county court of the county, in counties in which a county court is in existence, or the circuit court of the county, in counties in which a county court is not in existence, which shall stay the judgment appealed from.
My brothers Smith and Banks might be tempted to ask what the "remedy" is when the defendant fails to comply with the forty *905 (40) day limit prescribed in the above statute. However, writing for a unanimous Court, Presiding Justice Prather stated:
Allowing any deviation on timeliness presents a serious problem. If this Court allows this appeal to be filed one day late, what does the Court do about an appeal filed two days, or three days late? When will late be too late and where should the line be drawn? The law provided Wheat forty (40) days in which to file his notice of appeal to the circuit court. He filed on the forty-first (41st) day, therefore, he filed late, albeit only one day. Again, the question arises, "When is late TOO LATE?" This Court follows the rules set forth in Rule 7.03 of the Uniform Criminal Rules of Circuit Court Practice and Miss. Code Ann. § 99-35-1 and holds that to appeal from a municipal court to the circuit court in a criminal case, the appeal must be brought within forty (40) days of the entry of the judgment against the defendant. "A rule which is not enforced is no rule." Tandy Electronics, Inc. v. Fletcher, 554 So.2d 308, 312 (Miss. 1989) (quoting Box v. State, 437 So.2d 19, 21 (Miss. 1983)).
Wheat v. City of Picayune, 631 So.2d 141, 142 (Miss. 1994). Not one of us found there to be an issue of "remedy" to discuss in the Wheat case, which is understandable because it was no more relevant to that analysis than it is to this one.
While it is true that some states do not have a statutory speedy trial law and rely solely on federal constitutional speedy trial decisions, the State of Mississippi has long had a specific speedy trial statute. The current version was enacted by the Legislature by Ch. 420, Laws of 1976. We first construed it in Payne v. State, 363 So.2d 278 (Miss. 1978), holding directly and by no means tacitly that its violation required the dismissal of the indictment and discharge of the defendant. Again in 1980, in Turner v. State, 383 So.2d 489 (Miss. 1980), we held that unless there was literal compliance with the mandatory provision of the statute, the accused must be discharged.
It is a firmly embedded principle that when, in light of this Court's interpretation of a statute, the statute is retained in subsequent codes without amendment by the Legislature, this Court's interpretation becomes, in effect, part of the statute. Crosby v. Alton Ochsner Medical Foundation, 276 So.2d 661, 670 (Miss. 1973). See also, Choctaw, Inc. v. Wichner, 521 So.2d 878 (Miss. 1988); McDaniel v. Beane 515 So.2d 949, 951 (Miss. 1987); In re Kelly's Estate, 193 So.2d 575 (Miss. 1967); Kittrell v. O'Flynn, 203 Miss. 164, 33 So.2d 628 (1948). In Crosby, we stated:
The construction that we have placed on the revocation statute has in effect been approved by the legislature. The legislature has met many times since 1855 without any enactment directed toward the revocation statute and thereby has approved the construction of the legislative intent placed thereon. Thus a decision in Hairston [v. Hairston, 30 Miss. 276 (1855)] has become in effect, a part of the statute. When a statute is repeatedly re-enacted in essentially the same language and by its retention in all subsequent codes, a decision of this Court interpreting the statute becomes in effect a part of the statute. Therefore, if the statute is to be amended, it should be done by the legislature and not by judicial decision.
Id. at 670. (Emphasis added). Justice Banks places great emphasis on the fact that our Legislature has not reenacted the speedy trial statute. What my brother Banks fails to note, however, is that under Mississippi's legislative scheme, a statute is only reenacted when it has been set in motion with a specific date in the future set out for the statute to be automatically repealed. If a statute is enacted with no repealer, unless the Legislature wants to amend the statute, it is not addressed. Why would the Legislature reenact a statute using the same language when the statute is indefinitely valid? If a statute continues to be met by the Legislature's approval in light of judicial interpretation, it is retained, not reenacted.
Thus the "repeated reenactment" language from our prior case law is only relevant in situations where the Legislature has reenacted a statute that would have been repealed if not for legislative action. Otherwise, the appropriate analysis centers around whether the statute has been amended or *906 retained. Our 270 day rule has been retained in exactly the same language for a total of eighteen years, and for sixteen years subsequent to this Court's first interpretation of its meaning. Based on well established Mississippi law, this Court's holdings as to the meaning of the 270 day rule have become in effect part of the statute.
Justice Banks also cites United States Supreme Court case law, and law from other jurisdictions in support of his argument that legislative silence does not indicate the Legislature's approval. This may be true in some instances, but clearly is not persuasive here. Short of the Legislature attempting to limit rights federally granted, the United States Supreme Court does not control our interpretation of our State's laws. However, if the Justices of this Court deem that authority to be persuasive, it should be noted that the Supreme Court has said:
The longstanding acceptance by the courts, coupled with Congress' failure to reject [the courts'] reasonable interpretation of the wording of [a statute] ... argues significantly in favor of acceptance of the [established] rule by this Court. Blau v. Lehman, 368 U.S. 403, 413, 82 S.Ct. 451, 456, 7 L.Ed.2d 403 (1962).
Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, at 733, 95 S.Ct. 1917, at 1924, 44 L.Ed.2d 539 (1975). Therefore, there are situations where we should conclude that the Legislature has approved judicial interpretation of a statute, even if the Legislature has not specifically addressed the statute since its promulgation.
The present case before this Court is one of those situations. We are not dealing with a recently enacted statute, or a statute that has only recently been interpreted by this Court. Nor is this a situation where we should feel compelled to correct clearly wrong or completely unreasonable prior judicial interpretation. In those situations it might indeed be unwise and costly to society to conclude that we are powerless to act because the Legislature has approved our construction of a statute. However, in this context, where the Legislature has had nearly two decades to change the statute, in a state where the torrid climate surrounding criminal adjudication makes a consistent impression on the minds of all those concerned with our laws, we must acknowledge that the Legislature has accepted our longstanding construction of the 270 day rule, and realize that it is not now this Court's privilege to alter the statute.
This general rule of construction also prevails in other states and the federal courts. See, Smith v. Employers' Fire Ins. Co., 255 Ga. 596, 340 S.E.2d 606, 608 (1986); Davies v. Bossert, 449 So.2d 418, 420 (Fla.App. 3 Dist. 1984); Texas Employers' Ins. Ass'n v. Perez, 673 S.W.2d 669, 672 (Tex. App. 1 Dist. 1984); City of Portage v. Rogness, 450 N.E.2d 533, 535 (Ind. App. 3 Dist. 1983); Slatin v. Stanford Research Institute, 590 F.2d 1292, 1293 (4th Cir.1979); Stawikowski v. Collins Elec. Const. Co., 289 N.W.2d 390, 395 (Minn. 1979); Cagle v. Butcher, 118 Ariz. 122, 575 P.2d 321, 323 (1978); Richerson v. Jones, 551 F.2d 918, 927 (3rd Cir.1977).
This is a common sense rule, because if a court construes a statute glaringly at odds with what the people speaking through the Legislature intended, it stands to reason the statute will be subsequently amended to reflect the actual intent of the Legislature. The amendment of the speedy trial statute manifested the Legislature's dissatisfaction with prior judicial interpretation. Therefore, the Caples and Heard interpretations of legislative intent are irrelevant with regard to what the Legislature meant by our present 270 day rule.
It is thus clear that the Legislature intended in enacting Miss. Code Ann. § 99-17-1, and the statute provides a formula, a talismanic, arbitrary rule for the benefit of all those criminally indicted: unless good cause be shown, and a continuance duly granted by the court, the accused must be tried no later than 270 days after arraignment. Mitchell v. State, 572 So.2d 865, 867 (Miss. 1990); Moore v. State, 556 So.2d 1031, 1033 (Miss. 1990); Kinzey v. State, 498 So.2d 814, 816 (Miss. 1986); Lightsey v. State, 493 So.2d 375, 378 (Miss. 1986); Nations v. State, 481 So.2d 760, 761 (Miss. 1985); Bailey v. State, 463 So.2d *907 1059, 1061-62 (Miss. 1985) (comparing a 270-day rule with constitutional right to a speedy trial). Having thus interpreted the statute, and that interpretation having become a part of the statute by legislative approval, this Court has no authority to change it, for to do so would be not simply overruling prior cases, but to amend the statute. Yelverton v. Yelverton, 200 Miss. 569, 571, 28 So.2d 176 (1946).
Furthermore, in Presley v. Mississippi State Hwy. Com'n, 608 So.2d 1288, 1295 (Miss. 1992) (as to part I C: Hawkins, P.J., and Sullivan, Pittman, Banks and McRae, JJ., concur), we observed that
[c]ourts cannot pass judgment upon the wisdom, practicality or even folly of a statute. We must follow it unless it clearly impinges upon some Constitutional mandate, and our Constitution neither gives wise statutes passing grades nor flunks the improvident ones. This is solely the prerogative of the people acting through their Legislature. Mississippi Milk Commission v. Vance, 240 Miss. 814, 856, 129 So.2d 642, 661 (1961); Mississippi Fire Ins. Co. v. Planters Bank, 138 Miss. 275, 283, 103 So. 84, 86 (1925); Bobo v. Board of Levee Comm'rs for Yazoo-Mississippi Delta, 92 Miss. 792, 811, 46 So. 819, 823 (1908); Martin v. Dix, 52 Miss. 53, 62 (1876).
It follows that short of declaring the 270 day rule unconstitutional, we are clearly not free to abandon it in favor of what we believe to be a more prudent path. The remedy is to call on the Legislature to change it, not this Court.
In Folk v. State, 576 So.2d 1243, 1245 (Miss. 1991), we said that the 270 day rule "is in form and nature not unlike a statute of limitations. It reflects a societal imperative for prompt trials." My brother Banks casts this aside as being "dicta," and a statement made "without analysis." However, as noted above, the remedy of discharge is clearly established in the unambiguous language of the statute, and if one is unwilling to accept that logic, it cannot be denied that the remedy of discharge has been made part of the statute through this Court's interpretation and subsequent legislative approval. Indeed, for sixteen years we have mandated dismissal of the indictment and discharge of the defendant when the state violates the statute. To reach the determination that the 270 day rule is "in form and nature not unlike a statute of limitations," requires little analysis.
An even more serious matter than this Court amending the statute, to which I adamantly object as being the wrong course of action in this case, is to then apply our new version retroactively. Justice Robertson stated in Perkins v. State, 487 So.2d 791, 792 (Miss. 1986), that "[i]t is axiomatic that statutes of limitations may not be made retroactive to the prejudice of a party." The Banks approach, which would judicially extend the 270 day rule to a 310 day rule, and then apply it retroactively in this case, would undoubtedly prejudice Winder who would otherwise be entitled to a dismissal of the indictment with prejudice.
In Presley v. Mississippi State Hwy. Com'n, 608 So.2d 1288, 1299 (1992), Justice Banks, stated that
[i]n Cain [v. McKinnon, 552 So.2d 91, 92 (1989)], we observed that where a new rule of law is created, where the defendant was not aware of the new rule at the time the cause of action arose and where the new rule was not "clearly foreshadowed," it would be unfair to apply the new rule retroactively.
While it must be noted that this statement was not made in the context of judicial legislation of a criminal statute, it is equally applicable to the present situation. Winder could not have been aware that this Court would extend the 270 day rule for the benefit of the prosecution. There has been no foreshadowing of Justice Banks' drastic departure from the clear meaning of the statute. Winder had a vested right, if not at the time the clock started to run, then certainly at the moment he filed a motion to dismiss for violation of the 270 day rule, to expect to have been tried within the time allotted to the state, and, if there were no showing of good cause and a continuance, have the indictment against him dismissed with prejudice. "Where the accused is not tried within 270 days of his arraignment, the state has *908 the burden of establishing good cause for the delay since the accused is under no duty to bring himself to trial." Lightsey, 493 So.2d at 376.
If we were determined to legislate in this Court, we should consider the entire Florida statute and not simply the part selected by Justice Banks' dissent. While it is true that Florida grants the district attorney a similar window period as that proposed by Justice Banks' opinion (although Florida only grants an additional 10 days after the hearing as opposed to 30), the Florida rule was statutorily created by amendment to F.S.A.R.Cr.P. 3.191, effective January 1, 1985. Additionally, the new Florida rule still only gives the prosecution a total of 190 days within which to bring trial  Justice Banks proposes to give our prosecutors 310 days (270 plus ten days to have the hearing, then if no prejudice, 30 more days within which the defendant may be tried).
I note further that Florida's new speedy trial statute is prospective only. If the defendant's motion for discharge was filed before January 1, 1985, the old Florida rule (not providing for a grace period) applies. Only if the accused filed the motion after the amendment to the Florida statute took effect on January 1, 1985, does the new law govern. Zabrani v. Cowart, 502 So.2d 1257, 1259 (Fla.App. 3 Dist. 1986). Even if the Florida district attorney benefits from the additional time, if trial is not commenced by 190 days, the defendant is discharged with prejudice. Upon the expiration of the allotted time in Justice Banks' scheme, the indictment is dismissed without prejudice. This would essentially give the district attorneys of this state the option of seeking another indictment and another 310 days to bring trial. That result would destroy our present statute and force the accused to argue, and this Court to revert to, the amorphous Barker v. Wingo balancing test, as that is really all that would remain. My brother Banks' approach is superfluous in light of the constitutional right to a speedy trial.
Miss. Code Ann., § 99-17-1 places no heavy burden on the district attorneys or circuit courts of the State of Mississippi. Without regard to the question of prejudice which will be discussed later, the following state statutes and rules of criminal procedure show that 270 days is a considerable amount of time:
(1) Alaska: Trial must be held within 120 days from the date of charge, arrest, or initial arraignment. Alaska Crim. Rule 45.
(2) Arizona: If the defendant is not in custody, the State must bring defendant to trial within 150 days from arrest or service of summons; and if defendant is in custody, within 120 days from arrest. Ariz.R.Crim.P. 8.2.
(3) Arkansas: Trial must be held within 12 months from the filing of the charge or from the date of the arrest, whichever is earlier. Ark.R.Crim.P. 28.1.
(4) California: Trial must be had within 60 days after indictment or information. Cal. Pen.Code § 1382.
(5) Colorado: The revised statute requires that trial take place within 6 months of the date of the entry of a not guilty plea; however, the defendant must move for a dismissal prior to commencement of trial and before any pretrial motions set for hearing immediately before trial or prior to entry of a plea. Col.Rev.Stat. § 18-1-405(1) (1992).
(6) Delaware: The rule is that trial must be had at the second term of court after commitment. 10 Del.C. § 6910 (1975).
(7) Florida: For felonies, trial must be had within 175 days from the date of the indictment, and 90 days for a misdemeanor. Florida allows the prosecutor an additional 15 days after the defendant has made a motion for discharge, but even then the time limits only extend to 190 days and 105 days. Fla.R.Crim.P. 3.191 (1986).
(8) Hawaii: The Rules of Penal Procedure require the trial be given within 6 months from the date of arrest or the filing of the charge, whichever is sooner. Haw.Rules of Penal Proc. 48(b).
(9) Idaho: Trial must be held within 6 months after arrest if the defendant is not indicted; six months after the indictment is filed; or six months from date of a not guilty *909 plea for a misdemeanor. Idaho Code Ann. § 19-3501 (1992).
(10) Illinois: The speedy trial statute provides that trial must be held within 120 days if the defendant is in custody. 725 Ill. Compiled Statutes § 5/103-5 (1993).
(11) Indiana: The State must bring defendant to trial within six months from the charge or arrest. Ind.R.Crim.P. 4.
(12) Iowa: The speedy trial rule is that trial must be brought within one year after arraignment, or 90 days after indictment. Iowa R.Crim.P. 27 (1991).
(13) Kansas: The Legislature has provided that a speedy trial must be had within 90 days after arraignment if the defendant is jailed, and 180 days after arraignment if he is held on appearance bond. Kan. Stat. Ann. § 22-3402 (1991).
(14) Kentucky: The statute grants a state right to speedy trial within 180 days after the request if the defendant is in prison. Ky. Rev.Stat. 500.110 (1993).
(15) Louisiana: In the case of felonies, the Criminal Code provides that if the defendant is in custody, trial must be had within 120 days from his motion; and 180 days if he is not in custody. La.Code Crim.P.Ann. Art. 701 (1992).
(16) Maryland: Trial must be brought within 180 days of arraignment or initial appearance of defense counsel, whichever is earlier. Md. Ann. Code Art. 27, § 591 (1992).
(17) Massachusetts: The Criminal Rules provide that the trial must be held within 12 months of return day, which is the day the defendant is ordered by summons to first appear. If the defendant is under arrest, the return day is the day he first appears to answer the charges. Mass.Rules Crim.P. 36.
(18) Minnesota: The Rules of Criminal Procedure provide that the trial must be within 60 days after demand; but in no case earlier than any guilty plea. Minn. R.Crim.P. 6.06, 11.10.
(19) Montana: The State Criminal Code provides a speedy trial limit of six months from entry of plea on misdemeanor charge, but it applies the Barker constitutional analysis to felonies. Mont. Code Ann. §§ 46-13-401 (1992); Barker v. Wingo, 407 U.S. 514 at 533, 92 S.Ct. 2182 at 2193-94, 33 L.Ed.2d 101.
(20) Nebraska: The revised statute provides a speedy trial period of 6 months from the date the indictment is returned or information is filed. Neb. Rev. Stat. § 29-1207 (1989).
(21) Nevada: The Legislature provides a 60 day speedy trial statute after indictment or information. Nev.Rev.Stat. § 178.556 (1991).
(22) New Hampshire: The speedy trial policy of the State of New Hampshire provides that if the defendant is incarcerated, the State must provide a show cause hearing for felonies and misdemeanors within 4 months from the date of the indictment. If not incarcerated, the hearing must be held within 6 months from the date of entry for misdemeanors, and within 9 months for felonies. Superior Ct. Speedy Trial Policy.
(23) New Mexico: Trial must be had within six months after arraignment. SCRA 1986, 5-604.
(24) New York: The criminal code provides that trial must be brought no later than six months from commencement of the action for felonies, and 90 days from commencement of the action for misdemeanors. N.Y.Crim.Law § 30.30(1) (McKinney 1981).
(25) North Carolina: The legislature provides that indictment and trial for treason and felonies must be at the second term of court after the defendant's request. N.C. Gen. Stat. § 15-10 (1992).
(26) Ohio: If the charge is a felony, the statute provides that trial shall commence within 270 days after arrest. Trial must be within 90 days after arrest or service of summons for misdemeanors of the first or second degree carrying sentences of not more than 60 days. Trial must be within 45 days for misdemeanors of the third or fourth degree carrying sentences of not more than 60 days; and for minor misdemeanors, trial must be within 30 days. Ohio Rev. Code Ann. §§ 2945.71-73 (1993).
(27) Oregon: If defendant is in custody for a felony or class A misdemeanor, trial must *910 be within 90 days of the defendant's request. Otherwise, the statute provides that trial must be within a reasonable period of time from the time charged. Ore.Rev.Stat. §§ 135.747, 135.763, 135.765 (1991).
(28) Pennsylvania: The state's criminal rules provide that the defendant is entitled to be tried within 180 days from the complaint if he is incarcerated, and 365 days from the complaint if he is out on bail. Pa.Crim. Rules P. 1100 (1989).
(29) Rhode Island: For "serious crimes", if the defendant demands trial, it must be given within six months after pleading to the indictment or information. R.I. Gen. Laws § 12-13-7 (Supp. 1992).
(30) South Carolina: Statute is akin to the old Mississippi statute in that if the charge is treason or a felony, the defendant must be indicted in the term after he is committed. If the defendant requests a speedy trial, he must be indicted and tried in the second term after the commitment. S.C. Code Ann. § 17-23-90 (1991).
(31) South Dakota: The speedy trial statute provides that 180 days from the date of the first appearance before a judge on complaint, indictment or information, defendant shall be brought to trial. S.D.Code Laws Ann. § 23A-44-5.1 (1993).
(32) Utah: If defendant is unable to post bail, trial must be brought within 30 days from the date of arraignment. Utah Code Ann. § 77-1-6(1)(f), (h) (1992).
(33) Vermont: Trial must be within six months of the date of the arrest. Vt. R.Crim.P. 48 (Supp. 1990).
(34) Virginia: If defendant is held in custody on a felony charge, trial must be brought within 5 months from the date: (1) of the determination of probable cause; (2) of the indictment; or (3) of presentment if there was no preliminary hearing. If defendant is not held in custody, trial must be granted within 9 months. Va. Code Ann. § 19.2-243 (1992).
(35) Washington: If defendant is not released from jail pending trial, trial must be brought within 60 days from time of arraignment. If defendant is released from jail pending trial, the state has 90 days within which to bring trial. Wash.Super.Ct.Crim.R. 3.3 (1989).
(36) West Virginia: Defendant must be brought to trial within 3 regular terms of court after presentment or indictment for felonies or misdemeanors. W. Va. Code § 62-3-21 (1992).
(37) Wisconsin: For a felony, trial must be given within 90 days from the date of the demand after the filing of the information or the indictment. For misdemeanors in Wisconsin, trial must be granted within 60 days from the initial court appearance. Wis. Stat. § 971.10 (1991-92).
(38) Wyoming: Defendant must be brought to trial within 120 days of arraignment. Wyo.R.Crim.P. 48.
Thus it may be seen that while the Mississippi statute does not allow the prosecution as much time as some states, it allows considerably more time than most.
Rather than placing additional burdens on an accused individual, this Court would do well to point out the small number of cases over the years in which we have been compelled to discharge a defendant or strain mightily for a reason not to. From 1978 to 1993 fifty-nine cases have raised the 270 day violation. Only seven defendants have been discharged by this Court. What this should make obvious is that the Mississippi Statute for speedy trial within 270 days is not a problem for the prosecutors in the State of Mississippi. What is alarming is that some would throw the baby out with the bath water to remedy a problem that does not exist, either in our urban or rural districts.
Three Circuit Court Districts, the Twelfth, Fourteenth and Twentieth have had no cases appealed based on violation of the 270 day statute. Five districts have had one case appealed, the Fifth, Sixth, Sixteenth, Seventeenth and the Nineteenth. Of those five cases, only one from the Sixteenth District resulted in a discharge and that was in 1988. Five districts have had two appeals on the 270 day statute. They are the First, the Eighth, Ninth, Tenth and the Fifteenth Circuit Court Districts. Out of these ten cases, *911 only the one from the First District required a discharge and this was done in 1978.
Three Circuit Court Districts have had three 270 day statute appeals, the Eleventh, Thirteenth, and the Eighteenth, and no discharges resulted from these nine cases. The Third Circuit Court District has had five cases appealed on the 270 day statute and in 1990, one of those cases required discharge by this Court. The Fourth Circuit Court District, home of the Winder case, has had nine prior appeals based on the 270 day statute. There were two reversals. Only one of the two reversals resulted in discharge.
The Second Circuit Court District has had ten appeals based on the 270 day statute resulting in one discharge and that occurred in 1990.
The Seventh Circuit Court District has had eleven appeals based on the violation of the 270 day statute with the result that one defendant was discharged and that was done in 1980.
But it must be said that without the "good cause" cases that both the plurality and this opinion would now reject, this number might be higher.
The opinion offered by Justice Banks attempts to resurrect the ghost of the dissents in Turner v. State, 383 So.2d 489 (Miss. 1980), and require what we have never required before, that somehow the defendant show that he has been prejudiced by the delay. Prejudice to this date has not been required by the cases from this Court nor has it been required by the statute from the legislature.
It should be further pointed out that this engrafting of the prejudice requirement upon the statute in the caselaw lays a heavier burden on the defendant than he would face if attempting to assert his constitutional right to a speedy trial under Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).
Under the Barker v. Wingo test, we have repeatedly said that an affirmative showing of prejudice by the defendant is not absolutely necessary to prove a denial of the constitutional right to a speedy trial. Wiley v. State, 582 So.2d 1008, 1013 (Miss. 1991), citing Flores v. State, 574 So.2d 1314, 1323 (Miss. 1990); Trotter v. State, 554 So.2d 313 (Miss. 1989). In the constitutional Barker context, a showing of prejudice adds weight to a claim of a denial of the right to speedy trial but under the Mississippi statute prejudice plays no role at all.
The factors cited by the opinion of Justice Banks as concerns in speedy trial issues are correct and they are from the case of United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 776-77, 15 L.Ed.2d 627 (1966), and deal with the constitutional right to speedy trial and not the 270 day statute of the State of Mississippi.
Although this Court has on occasion blurred the line between a Barker v. Wingo constitutional speedy trial claim and a State of Mississippi statutory speedy trial claim, the two are not the same and we have stead-fastly said so. The proposal by my brother Banks would merge the two concepts and thus destroy the present statutory 270 day rule in this State. In my opinion, that is an unwise course and I reject it.
It is certainly more reasonable to conclude that our Legislature meant 270 days when it said 270 days, and not 310 days. The fact of the matter is that Justice Banks does not merely address an allegedly ambiguous "remedy;" rather, he seeks to have this Court change the precise wording of the statute. Surely if one is unwilling to concede that our judicial interpretation has become part of the statute, it cannot be seriously questioned that the Legislature did not mean 310 days when it explicitly wrote 270 days.
The legislative history shows that originally the bill to amend our prior speedy trial statute called for a speedy trial within 180 days. The bill was subsequently amended to 270 days. Furthermore, when the votes were cast unanimously in favor of our present statute, no legislators were absent. (Senate Journal 1976). If the Legislature had wanted to create an involved scheme like the one proposed by Justice Banks, surely it would have done so. Justice Banks' "remedy" analysis simply does not reasonably construe legislative intent.
*912 We have the power to uphold the constitutionality of the statute or to declare it unconstitutional in whole or in part. Presley v. Mississippi State Hwy. Com'n, 608 So.2d 1288, 1295 (Miss. 1992). We may declare the statute is procedural and choose to ignore it or rewrite it, or we may declare that the statute is substantive and beyond our power to amend. Hall v. State, 539 So.2d 1338 (Miss. 1989); Flores v. State, 586 So.2d 811, 814 (Miss. 1991) (Hawkins, P.J., Concurring). I am less concerned with our power to do as we will than I am with the wisdom of that course of action. Because of the long history of this statute, unchanged in the face of the decisions of this Court, I would defer to the wisdom of the legislature and leave this statute as it now exists. We have accepted this legislative enactment for years, as they have accepted our interpretation of it. That is enough to stay our hand. What is needed in criminal law is certainty and this statute provides it.
I cannot agree with the plurality opinion in this case. Winder did not delay the proceedings against him. The state clearly failed to meet the plain and unambiguous mandate provided in Miss. Code Ann. § 99-17-1 (Supp. 1989).
In conclusion, I would:
1. Concur with Justice Banks that all prior cases accepting general statements of crowded dockets as good cause be overruled;
2. Decline in the future to accept sua sponte testimony of trial judges as admissible evidence on good cause;
3. Overrule Carson v. State;
4. Require a showing of due diligence to obtain unavailable evidence by the prosecutor before accepting that as good cause;
5. Overrule those cases that require the defendant give notice that he demands a speedy trial;
6. Reject any suggestion that the accused is required to show prejudice in any fashion under the statute;
7. Uphold the constitutionality and validity of the statute;
8. Reverse the conviction of Winder; and
9. Order Winder discharged.
McRAE, J., joins this dissent.
BANKS, J., joins this dissent in part.
BANKS, Justice, dissenting:
For the reasons stated in Justice Sullivan's dissent, I cannot accept the conclusion that our 270-day "speedy trial" statute was not violated here. This is another case which points up the fallacy of our supposed strict adherence to our speedy trial statute. In my view, that statute is honored more in the breach than the application and that is because we have backed into the Draconian remedy of absolute dismissal.
I would choose this occasion to revisit the issue of the appropriate remedy for a violation of the 270-day rule found in Miss. Code Ann. § 99-17-1 (Supp. 1993) and conclude that the statute is amenable to a range of remedies, depending upon the harm flowing from its violation. I would abandon the view that the only remedy is discharge with prejudice.

I
Miss. Code Ann. § 99-17-1 (Supp. 1993) is short and plain:
Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.
This statute, prior to its amendment to its present form by the Legislature by Ch. 420, Laws 1976, read as follows:
All indictments shall be tried at the first term, unless good cause be shown for a continuance.
Miss. Code Ann. § 99-17-1 (1972).
As long ago as 1880, this Court faced a challenge to a criminal charge grounded on the failure of the court to try the prisoner at the term as required by the statute. Ex Parte Caples, 58 Miss. 358 (1880). The Court observed that the statute had no provision requiring discharge. Id. at 362. In its *913 view "[t]he utmost effect of a refusal on the part of a judge to afford a prisoner a trial when demanded at the time appointed by law, when no legal reason exists for a continuance of the case, must be very greatly to strengthen an application for bail[.]" Id.
In Heard v. Clark, 156 Miss. 355, 126 So. 43, (1930), this Court noted that the Caples Court did not mention the statute, which appeared in the Code of 1871 exactly as written in the Code of 1972, but opined that the result would not have been different had the statute been specifically considered. Heard, 156 Miss. at 358, 126 So. at 44. In Heard, the Court again declined to discharge a prisoner because of one arbitrary continuance in contravention of the statute. As in Caples, the Heard Court refused to address the hypothetical of a second unauthorized continuance. Id. As far as this writer had been able to determine, this statute, standing alone, has never been a vehicle for absolute discharge prior to its amendment in 1976.
This is consistent with the observation of Professor Amsterdam that state statutes similar to this, derived from the English Habeas Corpus Act of 1679, were usually construed as directed solely at prolonged custody and their violation resulted only in "release from custody, but neither expedition nor abatement of the criminal prosecution." Amsterdam, Speedy Trial: Rights and Remedies, 27 Stan.L.Rev. 525, 533-534 (1975).
We first construed the statute as amended in 1976 in Payne v. State, 363 So.2d 278 (Miss. 1978), holding that its violation in that case required the dismissal of the indictment. That opinion termed the statute "plain and unambiguous." Id. at 279. There was no discussion of our precedents construing the predecessor provision and no consideration of options other than discharge. Id.
We next encountered Miss. Code Ann. § 99-17-1 in Turner v. State, 383 So.2d 489 (Miss. 1980), a case which, in my view, is seriously misread by the other opinions in the instant case. The majority there, inter-mixing statutory and the constitutional standards enunciated in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), found an absence of good cause for failure to comply with the statute and, most importantly for the present analysis, that the state had confessed prejudice to the defendant. The court ordered discharge. Id. at 491. There were two dissenting opinions, one authored by and the other joined by the author of Payne. One dissent cited the Caples and Heard decisions and urged that the statute be construed to require prejudice before a defendant could be discharged, a point not inconsistent with what the majority did. The dissenters relied upon the finding of the trial court that there was no prejudice for its suggested disposition of affirmance. Id. at 491-492 (Lee, J., with whom Bowling, J. joined, dissenting). No argument was made concerning the propriety of the majority's accepting the state's failure to brief the prejudice issue as confession of error on this point. Id. The second dissenting opinion, by the author of Payne, suggested, additionally, that there was good cause shown in the record for the delay. Id. at 493-495 (Bowling, J., dissenting).
That same year we reversed a trial court's application of the 270-day rule to dismiss pending charges. State v. Davis, 382 So.2d 1095 (Miss. 1980). In addition to observing that there had been a misapplication of the rule in computing the time chargeable to the state, this Court distinguished Turner, in part, by observing that there the Court found that Turner had suffered prejudice as confessed by the state in that case. Davis, 382 So.2d at 1098. That reaffirmation of the prejudice requirement, implicitly accepted by the majority in Turner, has since been largely ignored but never explicitly repudiated by this Court.
Much of what we have written since Turner and Davis has been concerned with what does or does not toll the statute and what is or is not good cause. This Court has never discussed alternatives to the remedy of dismissal with prejudice for violation of Miss. Code Ann. § 99-17-1. Conversely, we have determined that the only remedy for violation of an appellant's constitutional right to speedy trial is discharge. Trotter v. State, 554 So.2d 313, 315 (Miss. 1989); Smith v. State, 550 So.2d 406, 409 (Miss. 1989). Additionally, to this point, the Court has not analyzed the issue of whether some showing *914 of prejudice must be made by the defendant in order to be entitled to discharge under Miss. Code Ann. § 99-17-1.
We have rarely found cause for reversal and discharge based solely on our 270-day statute, that is, without also finding a constitutional speedy trial violation. Moore v. State, 556 So.2d 1031 (Miss. 1990), Yarber v. State, 573 So.2d 727 (Miss. 1990), and Ford v. State, 589 So.2d 1261 (1991) are instances where we have done so. Flores v. State, 586 So.2d 811, (Miss. 1991), is another, but there we explicitly relied upon Flores v. State I, 574 So.2d 1314 (Miss. 1990), involving a co-defendant which found both statutory and constitutional speedy trial violations. More often we have found good cause for delay in a variety of circumstances. See e.g. Moore, 556 So.2d at 1032-1033 (and cases cited therein). In a few instances we have found a constitutional as well as a statutory violation. Flores I, 574 So.2d at 1324; Vickery v. State, 535 So.2d 1371 (Miss. 1988).
Despite the fact that the statute is silent as to remedy, we have behaved as if it required absolute discharge, even in the absence of prejudice, without any analysis whatsoever. We have gone so far, in dicta, as to term the statute tantamount to a statute of limitations, again without analysis. Folk v. State, 576 So.2d 1243 (1991). This is not what the statute says. While it is true that the ABA Standard for speedy trial remedy is absolute discharge and there are court decisions suggesting that there is no other adequate remedy for deprivation of the constitutional right to speedy trial, this position is not without its critics and it is anything but universally held. See, American Bar Association, Standards for Criminal Justice, Speedy Trial, Standard 12-4.1 and Commentary (1986); Compare, Amsterdam, Speedy Trial.
Other jurisdictions have considered the role of prejudice to the defendant and the appropriate remedy for a violation of statutory time limitations for prosecutions. Under 18 U.S.C. § 3161(c)(1), the trial of a criminal defendant in federal court shall commence within seventy days of arraignment unless a continuance is granted or one or more of a host of exceptions arises. 18 U.S.C. § 3162(a)(2) provides that a violation of § 3161 will cause the information or indictment to be dismissed on motion of the defendant. That statute leaves the determination to the court whether dismissal shall be with or without prejudice upon consideration of "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice, among other factors." 18 U.S.C. § 3162(a)(2).
In United States v. Taylor, 487 U.S. 326, 339-43, 108 S.Ct. 2413, 2421-22, 101 L.Ed.2d 297 (1988), the Court construed the statute, holding that while absence of actual prejudice to the defendant occasioned by the delay does not automatically trigger the necessity to dismiss the indictment with prejudice, absence of prejudice to the defendant "is another consideration in favor of permitting reprosecution." Id. at 341, 108 S.Ct. at 2422. The court observed that dismissal without prejudice is not a
toothless sanction: it forces the Government to obtain a new indictment if it decides to reprosecute, and it exposes the prosecution to dismissal on statute of limitations grounds. Given the burdens borne by the prosecution and the effect of delay on the Government's ability to meet those burdens, substantial delay well may make reprosecution, even if permitted, unlikely.
487 U.S. at 342, 108 S.Ct. at 2422. Further, after a dismissal without prejudice, the defendant could always argue a constitutional violation under the Barker criteria on the succeeding indictment.
California provides for dismissal of the charges against a confined defendant, if there is no trial within 90 days. The dismissal is without prejudice, however, and prosecution may be reinstituted subject to constitutional speedy trial standards. See People v. Clark, 172 Cal. App.3d 975, 218 Cal. Rptr. 481, 483-86 (1985), review denied, December 19, 1985.
Still other jurisdictions require a showing of prejudice before any dismissal for delay. Louisiana Code.Crim.Proc. § 701 (Supp. 1992). See State v. Booker, 444 So.2d 238, 240-41 (La. Ct. App. 1983), writ denied March 16, 1984 (appellant must show prejudice for *915 statutory provision requiring trial no later than 180 days following time when defendant charged with felony demands speedy trial).
Other states have provisions which include no specified time and construe those provisions in accordance with the Barker test. E.g., Colorado. Colo. Rev. Stat. § 18-1-405 (Supp. 1992). See People v. Chavez, 779 P.2d 375, 376 (Colo. 1989).
Florida, one of the two jurisdictions cited in the Commentary to the ABA Standard as a state successfully employing absolute discharge as a remedy for a violation of its speedy trial rule, abandoned discharge as the required automatic remedy effective January 1, 1985. The new rule in that state provides that failure to try a case within the time prescribed (90 days after charge for misdemeanors and 175 days for felonies) may be cured by granting a trial within 15 days after demand. Fla.R.Crim.P. 3.191(a) and (p). Discharge with prejudice is granted only upon a failure to comply with the 15-day requirement. Id.
Professor Amsterdam, speaking of the suggestion that discharge is the only remedy for a violation of a defendant's speedy trial rights, observed that
on its face, this proposition is incredible. Anglo-American law has long provided remedies for denial of a speedy trial other than dismissal of the prosecution with prejudice. State and lower federal courts enforcing subconstitutional speedy-trial guarantees have frequently found other remedies appropriate; and both lower courts and the Supreme Court have enforced the sixth amendment by other means.
27 Stan.L.Rev. at 534. He questioned whether the statement in Strunk v. United States, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973), to the effect that discharge is the only remedy was a slip of the judicial pen and went on the suggest that absolute discharge should be the remedy only where delay has impaired the defendant's ability to defend or possibly where it has been determined that such a drastic remedy is the only way to achieve prosecutorial or court compliance. 27 Stan.L.Rev. 537-541. A primary concern expressed there is that the prospect of the Draconian result of absolute discharge will inevitably lead to less rigorous enforcement of the speedy trial rights of defendants. Id.

II
It is almost universally accepted that right to speedy trial addresses at least three separate concerns: 1) the right of the accused to be free from prolonged and oppressive incarceration prior to guilt determination; 2) limitation of the period of anxiety and concern over the public accusation and pendency of charges; 3) impairment of the ability to the accused to mount a defense. United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627, 630-31 (1966). These concerns are what are normally considered the areas in which the accused can be "prejudiced". Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 118 (1972); Doggett v. United States, 505 U.S. ___, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). We and others have also identified a public concern in swift resolution of criminal charges. Klopfer v. North Carolina, 386 U.S. 213, 222-26, 87 S.Ct. 988, 993-95, 18 L.Ed.2d 1, 8 (1967) (societal demand for protection of rights of individuals to speedy trial dates back to Magna Carta and exists as one of the most basic rights guaranteed by our constitution); Burgess v. State, 473 So.2d 432, 434 (Miss. 1985) (without speedy trial, the State could hold citizens without trial for a potentially indefinite period). We have suggested that our 270-day statute addresses this latter concern as well. Whether that concern is best served by dismissing charges in serious crimes because of the mere passage of time has been debated. Compare Spencer v. State, 592 So.2d 1382, 1391 (Robertson, J., concurring) with Spencer, 592 So.2d at 1394 (Banks, J., concurring)
Surely the first concern, freedom from oppressive incarceration, may be addressed by the time-honored remedy of release on bail. The problem of anxiety over the pendency of charges may be remedied to some extent by requiring that charges be dismissed without prejudice. Both of these concerns may be addressed by following the present Florida approach of mandating trial within a very short time upon notice that the prescribed *916 time is exhausted. Perhaps in our less urban environment, 15 days is too short a period, but certainly, we have enough judges available to accord a trial within 30 days after notice, anywhere in this state.
The impairment of the ability to defend is the only interest of the accused which cannot be addressed by a remedy less final than absolute discharge. A requirement that the state bear the burden of persuasion that a defendant's ability to defend has not been impaired, absent which the charges would be dismissed with prejudice seems sufficient to the task of enforcing our 270-day statute.
The legislature has failed to specify a remedy for a failure to try an accused within 270 days after arraignment. The remedy that we have tacitly accepted and imposed, dismissal, has led to, as in the instant case, ever more lenient interpretations of just cause in order to avoid its effect. Ross v. State, 605 So.2d 17, 21 (Miss. 1992); Folk v. State, 576 So.2d 1243, 1247 (Miss. 1991). We should abandon that approach and adopt the following:
Where a defendant gives written notice, by filing the same with the clerk of the court with service upon the prosecutor and the assigned or senior judge by mail, that the prosecution has failed to comply with Section 99-17-1, it should be incumbent upon the trial court to grant a hearing within ten days. At such hearing the court would determine whether the 270-day period has been exceeded. In determining whether the 270-day period has been exceeded, no period should be excluded unless a specific period of continuance agreed to by the defendant or for a good cause, the nature of which is stated, has theretofore been ordered and duly noted on the record. General docket congestion should not be considered good cause. Nor should the unavailability of evidence due to lack of diligence be considered good cause. In the event that the 270-day rule has been exceeded, the prosecutor shall have the burden of persuasion, as measured by a preponderance of the evidence standard, that the accused's ability to mount a defense has not been impaired by the delay and that the delay was not deliberate. Should the prosecutor fail to so demonstrate, all charges shall be dismissed and the accused discharged. Should the state successfully demonstrate that there has been no impairment of the accused's ability to make a defense and that the delay was not deliberate, trial shall be set and had within 30 days of the service of notice that the 270-day period has been exceeded. A failure to conduct such a trial without the fault or written acquiescence of the defendant should result in dismissal of the indictment without prejudice.
Alternatively, I would jettison the 30-day trial aspect of the above procedure and simply determine, based on prejudice, whether the indictment should be dismissed with or without prejudice in the manner indicated above. Dismissal without prejudice would not stay the constitutional speedy trial clock.
These alternative remedies speak to all of the concerns of the statute. They end incarceration and anxiety prior to guilt determination because they provide for an immediate determination. They also address the question of trial prejudice. Neither our statutes, nor our rules should be construed as "traps for the unwary" but rather, construed to facilitate a just and speedy determination of cases on the merits with due regard for the rights of those at whom the force of government is directed. This suggested procedure addresses that goal.

III
Some have suggested that abandoning our absolute discharge approach to the statute ignores the principle of statutory construction which holds that when a statute has been interpreted and, thereafter, reenacted there is a manifestation of legislative intent that the statute retain that interpretation. Sullivan, dissenting, ante p. 11. There are two things wrong with this argument. The first is that the statute here in question, Miss. Code Ann. § 99-17-1 (Supp. 1993), has never been reenacted. There is no indication that it has ever been a part of any legislation since it was originally promulgated in 1976, or that there has been any legislation touching on this subject matter.
I am well aware of our legislative scheme referred to by Justice Sullivan. Clearly, *917 however, in Crosby v. Alton Ochsner Medical Foundation, 276 So.2d 661, 670 (Miss. 1973), upon which Justice Sullivan relies and from which he quotes, the statute in question had, in fact, been successively reenacted through a succession of codes. Our latest code is that of 1972 and therefore there has been no general reenactment through retention in a subsequent code as there or a specific reenactment of the statute. Each of the Mississippi cases cited by Justice Sullivan deal with statutes reenacted by the adoption of subsequent codes and thus do not support the proposition that mere legislative inaction has interpretive significance. See, Choctaw, Inc. v. Wichner, 521 So.2d 878 (Miss. 1988); McDaniel v. Beane, 515 So.2d 949, 951 (Miss. 1987); In Re Kelly's Estate, 193 So.2d 575 (Miss. 1967); Kittrell v. O'Flynn, 203 Miss. 164, 33 So.2d 628 (1948). Finally, in Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 95 S.Ct. 1917, 1924, 44 L.Ed.2d 539 (1975), from which Justice Sullivan quotes, in which Blue Chip cited there were specific attempts by the Securities and Exchange Commission to get the Congress to amend the act there in question to achieve the interpretation there sought which had been rejected by Congress. 421 U.S. 723, 732, 95 S.Ct. 1917, 1923-24. There is no such legislative history here.
Even if it were shown that bills seeking to amend or repeal the statute had been introduced and not passed my view would be unchanged. Whatever may be said for reenactment, respecting court interpretation, legislative silence is a different matter. Mr. Justice Frankfurter might well have had the instant circumstance in mind when he observed,
It would require very persuasive circumstances enveloping congressional silence to debar this Court from re-examining its own doctrines. To explain the cause of nonaction by Congress when Congress itself sheds no light is to venture into speculative unrealities. Congress may not have had its attention directed to an undesirable decision; and there is no indication that as to [the interpretation here at issue] it had, even by any bill that found its way into a committee pigeonhole... . Various considerations of parliamentary tactics and strategy might be suggested as reasons for the inaction ... but they would only be sufficient to indicate that we walk on quicksand when we try to find in the absence of corrective legislation a controlling legal principle.
Helvering v. Hallock, 309 U.S. 106, 119-21, 60 S.Ct. 444, 451-52, 84 L.Ed. 604, 612-13 (1940). More recently, that court recognized that "[o]rdinarily, and quite appropriately, courts are slow to attribute significance to the failure of Congress to act on a particular occasion" and that even "unsuccessful attempts at legislation are not the best of guides to legislative intent." Bob Jones University v. United States, 461 U.S. 574, 600, 103 S.Ct. 2017, 2032-33, 76 L.Ed.2d 157 (1983).
Other courts have expressed similar thoughts. See, Lowing v. Allstate Ins. Co., 176 Ariz. 101, 859 P.2d 724, 729 (1993) ("Silence in and of itself, in the absence of any indication that the legislature has considered the interpretation, is not instructive. A rule of statutory construction that requires us to presume that such silence is an expression of legislative intent is somewhat artificial and arbitrary."); Cianci v. Superior Court (Poppingo), 40 Cal.3d 903, 221 Cal. Rptr. 575, 710 P.2d 375, 387 (1985) ("`failure to act may indicate many things other than approval of a judicial construction of a statute.'"); Ornelas v. Randolph, 4 Cal.4th 1095, 17 Cal. Rptr.2d 594, 847 P.2d 560, 568 (1993) ("... something more than mere silence is required before [the inference of legislative acquiescence] is elevated into a species of implied legislation."); Providence Washington Ins. Co. v. Grant, 693 P.2d 872, 878 (Alaska 1985) ("Legislative inaction frequently indicates unawareness, preoccupation or paralysis. We decline to attribute significance to the legislature's mere inaction.")
I, too, decline to attribute significance to legislative inaction in this instance. A second fact commending that posture is that our "interpretation" until recent years, and then, sub silencio, has been less clear than its supporters acknowledge. As set forth more fully elsewhere herein, I cannot read what is regarded as our seminal case, Turner v. *918 State, to command dismissal for a violation of the statute in the absence of prejudice, where the majority took pains to point out that the fact of prejudice was there conceded. That aside, however,
[i]t is this judicial interpretation, and not the wisdom of the statute itself, that is here in issue; and if we conclude we should now revise that interpretation, we have both the power and the duty to do so. Respect for the rule of the judiciary in our tripartite system of government demands no less.
Cianci v. Superior Court (Poppingo), 221 Cal. Rptr. at 587, 710 P.2d at 388.

IV.
Chief Justice Hawkins would declare the statute an unconstitutional transgression of the assumed power of this Court to regulate procedural matters. Because, I believe that this case may be resolved without reaching that issue, and because the issue was neither raised nor briefed, I would not reach it. It is to be observed, however, that in criminal cases the state is the litigant. The legislature, in establishing state policy, promulgated the 270-day statute. We should strive to give effect to that rule in a manner consistent with the constitutional rights of criminal defendants and with the fair import of the statute as we perceive it.

V.
If I would apply the first alternative procedure suggested above to the instant case, I would observe that Winder was tried within 30 days of the expiration of the 270-day period and remand this case for a determination whether the delay prejudiced his defense. Because this case has been with this Court for an extended period, it is only reasonable that the prosecution be given additional time for the initial hearing in this particular case. I would require that hearing be had within 30 days of the issuance of the mandate herein. He would be entitled to dismissal and discharge in the event that the trial court is not convinced that he was not prejudiced. Applying the second procedure, the remand would be to determine whether dismissal would be with or without prejudice to further prosecution.
DAN M. LEE, P.J., joins this dissent.
NOTES
[1] The name of the victim and the names of her immediate family members have been changed to protect her identity.
[2] Justices Roy Noble Lee, Walker and Bowling dissented on the ground that before an accused should be entitled to discharge under the act, he should be required to show that the delay somehow prejudiced him. That view was not then, nor has it since been adopted by a majority of this Court.
[3] This Court's holdings were presaged in James L. Robertson, Discovering Rule 11 of the Mississippi Rules of Civil Procedure, 8 Miss.C.L.Rev. 111 (1988), wherein it was written that legislative enactments duly enacted by the Legislature and signed into law by the Governor dealing with court practice and evidence were "quite arguably beyond its legislative authority." (p. 115, fn. 18), "well beyond legislative competence," (p. 116), and this Court should "ignore any such restriction in coverage emanating from the legislative enactment." (p. 124, fn. 53) Moreover, any standard in such a legislative Act "should be disregarded." (p. 131) "While we need all the help we can get from others, in the end the judicial authority should be neither shared nor abdicated." (p. 156) This article had been written, but had not been published when Hall was decided.
[4] It should be pointed out that Miss. Code Ann. § 9-3-61, et seq., Ch. 501, Laws of 1975, grants this Court statutory rule-making powers, subject however to veto by the Legislature. Miss. Code Ann. § 9-3-71. We have not since 1982 considered it necessary to submit any proposed rules of civil procedure or evidence to the Legislature for approval, nor considered the remaining sections of the Act necessary to give us any rule making authority. We have asserted this right independent of any statutory authority.
[5] F. Keith Ball, Comment, The Limits of the Mississippi Rule-Making Authority, 60 Miss.L.J. 2 (1990).

Also, Ronald C. Morton, Note, Rules, Rulemaking and the Ruled: The Mississippi Supreme Court as the Self Proclaimed Ruler, 12 Miss. Coll.L.Rev. 293 (1991), a detailed article on this subject in which the author, while not exactly complimentary of the Court's position, recognizes it as a fait accompli. Id. at 315. He does suggest a possible due process challenge in the federal courts. Id. at 316.
Morton also cites other decisions by this Court in which statutes gave way to Court rules. Id. at 326, n. 236. See also Duncan v. St. Romain, 569 So.2d 687 (Miss. 1990); Jones v. State, 461 So.2d 686, 694 (Miss. 1984); also Id. at 316, n. 236.
Messrs. Ball and Morton authored these articles as students.
[6] Justice Banks would finesse the question on the ground the issue was neither raised at trial nor brief on appeal. (Banks, J., dissenting, p. 917.) This little impediment created no problem for us, however, in Hall v. State, 539 So.2d 1338 (Miss. 1989) (Hawkins, P.J., dissenting, 539 So.2d at 1349); see Leatherwood v. State, 548 So.2d 389 (Miss. 1989) (Hawkins, P.J., dissenting, 548 So.2d at 406-07).